**POLSINELLI LLP**
Noel S. Cohen (CA Bar No. 219645)
Ilana Zelener (CA Bar No. 311584)
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone:   310.556.1801
Facsimile:    310.556.1802
Email: ncohen@polsinelli.com
Email: izelener@polsinelli.com

**POLSINELLI PC**
Stuart M. Pape (*pro hac vice application forthcoming*)
1401 Eye ("I") Street, N.W., Suite 800
Washington, DC 20005
Telephone:  (202) 783-3300
Facsimile:  (202) 783-3535
Email:  spape@polsinelli.com

Jennifer J. Axel (*pro hac vice application forthcoming*)
One East Washington, Suite 1200
Phoenix, AZ 85004
Telephone:  (602) 650-2000
Facsimile:  (602) 264-7033
Email:  jaxel@polsinelli.com

*Attorneys for Defendant and Counterclaimant Hologenix, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Multiple Energy Technologies, LLC<br><br>             Plaintiff,<br><br>        v.<br><br>Hologenix, LLC,<br><br>             Defendants. | Case No. 2:19-cv-01483-PA-RAO<br><br>**DEFENDANT'S ANSWER TO COMPLAINT AND COUNTERCLAIM**<br><br>Complaint Filed: February 28, 2019<br>Counterclaim Filed:  April 12, 2019 |
| Hologenix, LLC<br><br>             Counterclaimant,<br><br>        v.<br><br>Multiple Energy Technologies, LLC<br><br>             Counter-Defendant. | **JURY TRIAL DEMANDED** |

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
310.556.1801

67939043.6

Defendant and Counterclaimant Hologenix, LLC ("Defendant" or "Hologenix"), by and through its undersigned counsel, hereby files its Answer to the Complaint by Plaintiff Multiple Energy Technologies, LLC ("Plaintiff" or "MET") as well as its Counterclaim against Counter-Defendant MET as follows:

1.     Answering paragraph 1 of the Complaint, Defendant admits that Plaintiff purports to bring an action arising out of Defendant's advertising and promotion of material branded as Celliant® ("Celliant" or the "Product"). Defendant denies the remaining allegations set forth in paragraph 1 of the Complaint.

2.     Answering paragraph 2 of the Complaint, Defendant affirmatively alleges that the Product is a proprietary mix of safe, naturally occurring thermo-reactive minerals selected for their unique properties and combined into a patented formula.  If Defendant's proprietary blend of minerals is properly embedded into the core of polyester fibers during the extrusion process, the resulting product has the ability to absorb and re-emit the visible and infrared electromagnetic light energy emitted by the body.  These minerals then alter the wavelengths of this energy and reflect them back to the body, making it possible for the tissue to absorb it. The energy that the Product recycles back to the body has been proven to trigger vasodilation in the capillary beds and make more oxygen available to cells, resulting in more fuel for the body.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 2 of the Complaint and therefore denies same.

3.     Answering paragraph 3 of the Complaint, Defendant admits that certain marketing and advertising materials state that the U.S. Food and Drug Administration ("FDA") determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act.  Defendant further admits that, on rare occasions, it erroneously noted that the Product was approved by the FDA and/or the media inaccurately

reported that the Product was approved by the FDA.  Defendant affirmatively alleges that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act.   Defendant also affirmatively alleges that its July 25, 2017 press release speaks for itself.  Defendant further affirmatively alleges that the Product has been shown to increase local blood flow at the site of application in healthy individuals.  Defendant denies the remaining allegations set forth in paragraph 3 of the Complaint.

4.     Answering paragraph 4 of the Complaint, Defendant affirmatively alleges that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act.  Defendant admits that the FDA has not "approved" the Product. Defendant denies the remaining allegations in paragraph 4 of the Complaint.

5.     Answering paragraph 5 of the Complaint, Defendant admits that its marketing and advertising materials state that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act.  Defendant further admits that its advertising materials state that the Product can improve tissue oxygen, a process vital to cells and muscles recovering through improved blood flow.  Defendant further admits that, on rare occasions, it erroneously noted that the Product was approved by the FDA and/or the media inaccurately reported that the Product was approved by the FDA.  Defendant denies the remaining allegations set forth in paragraph 5 of the Complaint.

6.     Answering paragraph 6 of the Complaint, Defendant admits that its marketing and advertising materials stated that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act.  Defendant further admits that its marketing and advertising materials state that Product can improve tissue

oxygen, a process vital to cells and muscles recovering through improved blood flow.  Defendant also admits that its marketing and advertising materials state that improved tissue oxygen can increase performance, energy, strength and stamina, aids in faster recovery and promotes restful sleep.  Defendant further admits that, on rare occasions, it erroneously noted that the Product was approved by the FDA and/or the media inaccurately reported that the Product was approved by the FDA. Defendant denies the remaining allegations set forth in paragraph 6 of the Complaint.

7.    Defendant denies the allegations in paragraph 7 of the Complaint.

8.    Defendant denies the allegations in paragraph 8 of the Complaint.

9.    Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 9 of the Complaint and therefore denies same.

**PARTIES**

10.    Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 10 of the Complaint and therefore denies same.

11.    Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 11 of the Complaint and therefore denies same.

12.    Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 12 of the Complaint and therefore denies same.

13.    Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 13 of the Complaint and therefore denies same.

14.    Defendant admits the allegations in paragraph 14 of the Complaint.

15.     Answering paragraph 15 of the Complaint, Defendant affirmatively alleges that the post on Celiant.com titled "*See How Celliant Is Made*" speaks for itself.   Defendant admits that it sells the Product, both as a fiber and as a powder and that it sells the Product to Under Armour, Inc. affiliates.   Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 15 of the Complaint.

## JURISDICTION AND VENUE

16.     Answering paragraph 16 of the Complaint, Defendant does not dispute, at this time, that this Court has jurisdiction over it with respect to the claims asserted by Plaintiff.

17.     Answering paragraph 17 of the Complaint, Defendant does not dispute, at this time, that venue is proper in this Court.

18.     Answering paragraph 18 of the Complaint, Defendant admits that its headquarters are in Santa Monica, California.   Defendant affirmatively alleges that the domicile of a limited liability company is based on the citizenship of its members. Defendant further affirmatively alleges that its members are citizens of California, Colorado, New York, Puerto Rico and the European Union.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 18 of the Complaint.

19.     Defendant admits the allegations in paragraph 19 of the Complaint.

## FACTUAL ALLEGATIONS

20.     Answering paragraph 20 of the Complaint, Defendant admits that the Product is not "FDA-approved."  Defendant further admits that, on rare occasions, it erroneously noted that the Product was approved by the FDA and/or the media inaccurately reported that the Product was approved by the FDA.  Defendant denies the remaining allegations in paragraph 20 of the Complaint.

21.     Answering paragraph 21 of the Complaint, Defendant affirmatively alleges that the July 31, 2017 tweet and Facebook post on Celliant's accounts speak

for themselves.    Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 21 of the Complaint.

22.    Answering paragraph 22 of the Complaint, Defendant affirmatively alleges that the August 10, 2017 tweet and Facebook post on Celliant's accounts speak for themselves.   Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 22 of the Complaint.

23.    Answering paragraph 23 of the Complaint, Defendant affirmatively alleges that the August 28, 2017 *Huffington Post* article by Vivien Moon titled "*The Future of Health and Wellness Is a Responsive Textile*" speaks for itself.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 23 of the Complaint.

24.    Answering paragraph 24 of the Complaint, Defendant admits that the August 28, 2017 *Huffington Post* article by Vivien Moon titled "*The Future of Health and Wellness Is a Responsive Textile*" was linked to its website.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 24 of the Complaint.

25.    Answering paragraph 25 of the Complaint, Defendant affirmatively alleges that the September 26, 2017 tweet on Celliant's account speaks for itself. Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 25 of the Complaint.

26.    Answering paragraph 26 of the Complaint Defendant affirmatively alleges that the October 16, 2017 tweet and Facebook post on Celliant's accounts speak for themselves.   Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 26 of the Complaint.

27.    Answering paragraph 27 of the Complaint, Defendant affirmatively alleges that the February 22, 2018 article on Inc.com by Sonya Mann titled "*How to Get E-Commerce Customers to Spend a Lot of Money at Once (and Then Do It*

*Again)*" speaks for itself.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 27 of the Complaint.

28.    Answering paragraph 28 of the Complaint, Defendant affirmatively alleges that the June 27, 2018 article on Hunker.com by the "Hunker Team" titled "*7 Blankets That Do More Than Just Blanket*" speaks for itself.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 28 of the Complaint.

29.    Answering paragraph 29 of the Complaint, Defendant affirmatively alleges that the July 18, 2018 article on Shape.com by Macaela Mackenzie titled "*This New Under Armour Athleisure Collection Is All About Recovery*" speaks for itself.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 29 of the Complaint.

30.    Answering paragraph 30 of the Complaint, Defendant affirmatively alleges that the July 18, 2018 article on WWD Digital Daily by Jean Palmieri titled "*Après Workout*" speaks for itself.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 30 of the Complaint.

31.    Answering paragraph 31 of the Complaint, Defendant affirmatively alleges that the August 27, 2018 article in Gear Patrol by an unidentified author and titled "*This Material You've Never Heard of Is Taking Over Activewear*" speaks for itself.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph in 31 of the Complaint.

32.    Answering paragraph 32 of the Complaint, Defendant affirmatively alleges that the August 31, 2018 article on talkingpointsmemo.com titled "*Wrap Yourself In Wellness With This Infinity Blanket*" speaks for itself.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 32 of the Complaint.

33.    Answering paragraph 33 of the Complaint, Defendant affirmatively alleges that the article on Mattress Clarity by Joe Auer titled "*How Does Celliant*

*Work?*" speaks for itself.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph in 33 of the Complaint.

34.     Answering paragraph 34 of the Complaint, Defendant denies that the product listing at https://www.pillows.com/purecare-celliant-queen-.html currently includes a specification stating it is FDA approved. Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 34 of the Complaint.

35.     Answering paragraph 35 of the Complaint, Defendant lacks sufficient information to form a belief as to the intent of statements by third-parties regarding the Product and therefore denies the same.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 35 of the Complaint.

36.     Answering paragraph 36 of the Complaint, Defendant admits that it uses the phrases "FDA-determined" to describe the Product.  Defendant denies all remaining allegations set forth in paragraph 36 of the Complaint.

37.     Answering paragraph 37 of the Complaint, Defendant affirmatively alleges that its July 25, 2017 press release speaks for itself.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 37 of the Complaint.

38.     Answering paragraph 38 of the Complaint, Defendant affirmatively alleges that its July 25, 2017 post on Celliant's Facebook page speaks for itself. Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 38 of the Complaint.

39.     Answering paragraph 39 of the Complaint, Defendant admits that it has stated on Celliant's website and on Celliant's social media pages that the Product is "FDA-determined." Defendant denies all remaining allegations set forth paragraph 39 of the Complaint.

40.     Defendant admits the allegations in paragraph 40 of the Complaint.

ANSWER TO COMPLAINT AND COUNTERCLAIM
Case No. 2:19-cv-01483-PA-RAO
67939043.6

41.     Defendant admits the allegations in paragraph 41 of the Complaint.

42.     Defendant admits the allegations in paragraph 42 of the Complaint.

43.     Defendant admits the allegations in paragraph 43 of the Complaint.

44.     Answering paragraph 44 of the Complaint, Defendant admits that it posted a link to the article titled "REVOLUTIONARY COTTON-RICH YOGA WEAR REDUCES RECOVERY TIME WITH FDA-DETERMINED MEDICAL DEVICE CELLIANT TECHNOLOGY DEBUTS AT PREMIÈRE VISION SHOW" that first appeared on the cottonusa.org website on Celliant's website. Defendant denies all remaining allegations set forth paragraph 44 of the Complaint.

45.     Answering paragraph 45 of the Complaint, Defendant affirmatively alleges that Draper Therapies' July 28, 2017 press release speaks for itself.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 45 of the Complaint.

46.     Answering paragraph 46 of the Complaint, Defendant affirmatively alleges that Bear Mattress' 2017 press release speaks for itself.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 46 of the Complaint.

47.     Answering paragraph 47 of the Complaint, Defendant affirmatively alleges that the post on sleepopolis.com titled "*What is Celliant Fiber?*" speaks for itself.  Defendant admits that it posted a link to the post on sleepopolis.com titled "*What is Celliant Fiber?*" on Celliant's twitter account on or around November 4, 2017.   Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 47 of the Complaint.

48.     Answering paragraph 48 of the Complaint, Defendant affirmatively alleges that the post on fastcompany.com titled "*These high-tech pajamas are proven to help your post-workout recovery?*" speaks for itself.  Defendant admits that it posted a link to the post on fastcompany.com titled "*These high-tech pajamas are proven to help your post-workout recovery?*" on Celliant's twitter account on or

9

67939043.6

around April 14, 2018.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 48 of the Complaint.

49.    Answering paragraph 49 of the Complaint, Defendant affirmatively alleges that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act.  Defendant admits that it shared a link to CF Stinson's June 11, 2018 Facebook post to Celliant's Facebook page.  Defendant affirmatively alleges that the June 11, 2018 Facebook post by CF Stinson speaks for itself.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 49 of the Complaint.

50.    Answering paragraph 50 of the Complaint, Defendant affirmatively alleges that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act.  Defendant admits that it linked an October 12, 2018 article titled "*Under Armour: 'We make people better*'" by Grace Whelan from www.drapersonline.com to its website. Defendant affirmatively alleges that the October 12, 2018 article titled "*Under Armour: 'We make people better*'" by Grace Whelan speaks for itself.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 50 of the Complaint.

51.    Answering paragraph 51 of the Complaint, Defendant affirmatively alleges that the October 28, 2018 Facebook post on Celliant's account speaks for itself. Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 51 of the Complaint.

52.    Answering paragraph 52 of the Complaint, Defendant affirmatively alleges that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic  Act.    Defendant  admits  that  the  product  listing  at https://www.walmart.com/ip/Bare-Ultrawarmth-3mm-Scuba-Diving-Dive-

ANSWER TO COMPLAINT AND COUNTERCLAIM
Case No. 2:19-cv-01483-PA-RAO

Snorkeling-Gloves/531019045 states that "Celliant is scientifically proven and FDA-determined." Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 52 of the Complaint.

53. Answering paragraph 53 of the Complaint, Defendant affirmatively alleges that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act. Defendant admits that the product listing at https://www.underarmour.com/en-us/mens-athlete-recovery-compression-leggings/pid1318387-001 states that "Products powered by Celliant have been determined by the FDA to increase localized circulation, leading to faster recovery." Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 53 of the Complaint.

54. Defendant denies the allegations in paragraph 54 of the Complaint.

55. Answering paragraph 55 of the Complaint, Defendant admits that the Product is not registered as a medical device with the FDA. Defendant affirmatively alleges that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act and that the FDA expressly stated that it does not intend to enforce any applicable regulatory requirements for the Products under the Federal Food, Drug, and Cosmetic Act and its implementing regulations, which requirements include medical device establishment registration, product listing, and premarket notification requirements. Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 55 of the Complaint.

56. Answering paragraph 56 of the Complaint, Defendant affirmatively alleges that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act. Defendant further affirmatively alleges that in the course of its interaction with FDA leading to FDA's determination that the Celliant products are

medical devices and general wellness products, the scope of claims to be made for Celliant-containing products was made known to FDA and feedback was obtained on permitted and non-permitted claims. Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 56 of the Complaint.

57. Answering paragraph 57 of the Complaint, Defendant affirmatively alleges that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act. Defendant further affirmatively alleges that in the course of its interaction with FDA leading to FDA's determination that the Celliant products are medical devices and general wellness products, the scope of claims to be made for Celliant-containing products was made known to FDA and feedback was obtained on permitted and non-permitted claims. Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 57 of the Complaint.

58. Answering paragraph 58 of the Complaint, Defendant denies it has engaged in false and deceptive advertising regarding the Product, that it has obtained "ill-gotten gains" or that it has committed any unlawful act. Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 58 of the Complaint regarding Plaintiff's motivation for bringing this action and therefore denies same. Defendant denies the remaining allegations of paragraph 58 of the Complaint.

59. Answering paragraph 59 of the Complaint, Defendant affirmatively alleges that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act. Defendant further admits that, on rare occasions, it erroneously noted that the Product was approved by the FDA and/or the media inaccurately reported that the Product was approved by the FDA. Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 59 of the Complaint.

60.     Answering paragraph 60 of the Complaint, Defendant affirmatively alleges that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act and that the FDA expressly stated that the Product was not required to be registered as a medical device with the FDA.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 60 of the Complaint.

61.     Answering paragraph 61 of the Complaint, Defendant admits that the Product is not listed on the FDA's list of approved medical devices. Defendant affirmatively alleges that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act and that the FDA expressly stated it does not intend to enforce any applicable regulatory requirements for the Products under the Federal Food, Drug, and Cosmetic Act and its implementing regulations, which requirements include product listing. Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 61 of the Complaint.

62.     Answering paragraph 62 of the Complaint, Defendant admits that the Product is not registered as a medical device with the FDA.   Defendant affirmatively alleges that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act and that the FDA expressly stated that it does not intend to enforce any applicable regulatory requirements for the Products under the Federal Food, Drug, and Cosmetic Act and its implementing regulations, which requirements include medical device establishment registration, product listing, and premarket notification requirements.   Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 62 of the Complaint.

67939043.6

63.     Paragraph 63 of the Complaint asserts legal conclusions to which no response is required.  To the extent any response is required, Defendant denies the allegations of paragraph 63 of the Complaint.

64.     Paragraph 64 of the Complaint asserts legal conclusions to which no response is required.

65.     Defendant admits the allegations in paragraph 65 of the Complaint.

66.     Paragraph 66 of the Complaint asserts legal conclusions to which no response is required.  To the extent any response is required, Defendant denies the allegations of paragraph 66 of the Complaint.

67.     Paragraph 67 of the Complaint asserts legal conclusions to which no response is required.  To the extent any response is required, Defendant denies the allegations of paragraph 67 of the Complaint.

68.     Defendant admits the allegations in paragraph 68 of the Complaint.

69.     Answering paragraph 69 of the Complaint, Defendant affirmatively alleges that the articles published by the GAO and FDA identified in paragraph 69 of the Complaint speaks for themselves. Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 69 of the Complaint.

70.     Answering paragraph 70 of the Complaint, Defendant affirmatively alleges that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act.  Defendant further admits that, on rare occasions, it erroneously noted that the Product was approved by the FDA and/or the media inaccurately reported that the Product was approved by the FDA.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 70 of the Complaint.

71.     Answering paragraph 71 of the Complaint, Defendant affirmatively alleges that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and,

Cosmetic Act.  Defendant admits that the FDA did not "approve" the Product.
Except as expressly admitted herein, Defendant denies all remaining allegations set
forth paragraph 71 of the Complaint.

72.     Answering paragraph 72 of the Complaint, Defendant affirmatively
alleges that the FDA determined Celliant products are medical devices and general
wellness products, as defined in Section 201(h) of the Federal Food, Drug and,
Cosmetic Act.  Defendant further affirmatively alleges that the FDA does not
require premarket review of marketing claims for general wellness products or for
non-prescription medical devices.  Defendant further affirmatively alleges that in
the course of its interaction with FDA leading to FDA's determination that the
Celliant products are medical devices and general wellness products, the scope of
claims to be made for Celliant-containing products was made known to the FDA
and feedback was obtained on permitted and non-permitted claims.   Defendant
lacks sufficient information to form a belief as to the truth or falsity of the
remaining allegations set forth in paragraph 72 and therefore denies same.

73.     Paragraph 73 of the Complaint asserts legal conclusions to which no
response is required.  To the extent any response is required, Defendant denies the
allegations of paragraph 73 of the Complaint.

74.     Answering paragraph 74 of the Complaint, Defendant affirmatively
alleges that the FDA determined Celliant products are medical devices and general
wellness products, as defined in Section 201(h) of the Federal Food, Drug and,
Cosmetic Act.  Except as expressly admitted herein, Defendant denies all remaining
allegations set forth paragraph 74 of the Complaint.

75.     Answering paragraph 75 of the Complaint, Defendant affirmatively
alleges that the FDA determined Celliant products are medical devices and general
wellness products, as defined in Section 201(h) of the Federal Food, Drug and,
Cosmetic Act.  Defendant further affirmatively alleges that the FDA does not
require premarket review of marketing claims for general wellness products or for

non-prescription medical devices. Defendant further affirmatively alleges that in the course of its interaction with FDA leading to FDA's determination that the Celliant products are medical devices and general wellness products, the scope of claims to be made for Celliant-containing products was made known to FDA and feedback was obtained on permitted and non-permitted claims. Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 75 of the Complaint.

76.    Answering paragraph 76 of the Complaint, Defendant affirmatively alleges that the FDA determined Celliant products are medical devices and general wellness products, as defined in Section 201(h) of the Federal Food, Drug and, Cosmetic Act. Defendant denies the remaining allegations in paragraph 76 of the Complaint.

77.    Defendant denies the allegations in paragraph 77 of the Complaint.

78.    Defendant denies the allegations in paragraph 78 of the Complaint.

79.    Defendant denies the allegations in paragraph 79 of the Complaint.

80.    Defendant denies the allegations in paragraph 80 of the Complaint.

81.    Answering paragraph 81 of the Complaint, Defendant admits that it makes claims about the health benefits of the Product, including that tests establish that the Product can promote general wellness. Except as expressly admitted herein, Defendant denies all remaining allegations set forth in paragraph 81 of the Complaint

82.    Answering paragraph 82 of the Complaint, Defendant affirmatively alleges that its July 25, 2017 press release speaks for itself. Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 82 of the Complaint.

83.    Answering paragraph 83 of the Complaint, Defendant affirmatively alleges that its October 28, 2018 Facebook post speaks for itself. Except as

expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 83of the Complaint.

84.    Defendant denies the allegations in paragraph 84 of the Complaint.

85.    Paragraph 85 of the Complaint asserts legal conclusions to which no response is required.  To the extent any response is required, Defendant admits that MET and Hologenix both promote and sell bioceramic material.

86.    Defendant admits the allegations in paragraph 86 of the Complaint.

87.    Answering paragraph 87 of the Complaint, Defendant denies that it engaged in a campaign of false and misleading statements.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 87 of the Complaint regarding Plaintiff's purported relationships with Under Armour, Inc. or American Textile Company (and specific timing thereof) and therefore denies the same.  Defendant denies any remaining allegations of paragraph 87 of the Complaint.

88.    Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 88 of the Complaint and therefore denies same.  Defendant denies any remaining allegations of paragraph 88 of the Complaint.

89.    Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 89 and therefore denies same. Defendant denies any remaining allegations of paragraph 89 of the Complaint.

90.    Answering paragraph 90 of the Complaint, Defendant admits that on January 7, 2017 it posted a link from Time.com titled "*Under Armour Wants You to Buy Tom Brady's Pajamas*" to Celliant's twitter account.    Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 90 and therefore denies same.

91.    Answering paragraph 91 of the Complaint, Defendant admits that on April 24, 2017 it posted a link from sleepsherpa.com titled "*Tom Brady Pajamas*

17

*Review: Under Armor's New Performance Sleepwear*" to Celliant's twitter account. Defendant denies the remaining allegations in paragraph 91 of the Complaint.

92.     Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 92 and therefore denies same. Defendant denies any remaining allegations of paragraph 92 of the Complaint.

93.     Defendant denies the allegations in paragraph 93 of the Complaint.

94.     Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 94 regarding statements made during the purported contract negotiations between Plaintiff and Under Armour and therefore denies same.  Defendant denies any remaining allegations of paragraph 94 of the Complaint.

95.     Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 95 and therefore denies same. Defendant denies any remaining allegations of paragraph 95 of the Complaint.

96.     Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 96 and therefore denies same. Defendant denies any remaining allegations of paragraph 96 of the Complaint.

97.     Answering paragraph 97 of the Complaint, Defendant admits that it entered into a contract with Under Armour to supply the Product.  The terms of the contract speak for themselves.   Defendant denies any remaining allegations in paragraph 97 of the Complaint.

98.     Answering paragraph 98 of the Complaint, Defendant affirmatively alleges that its July 25, 2017 press release speaks for itself.  Except as expressly admitted herein, Defendant denies all remaining allegations set forth paragraph 98 of the Complaint. Defendant further admits that, on rare occasions, it erroneously noted that the Product was approved by the FDA and/or the media inaccurately reported that the Product was approved by the FDA.  Except as expressly admitted

67939043.6

herein, Defendant denies all remaining allegations set forth in paragraph 98 of the Complaint.

99. Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 99 and therefore denies same. Defendant denies any remaining allegations of paragraph 99 of the Complaint.

100. Answering paragraph 100 of the Complaint, Defendant admits that it entered into a contract with Under Armour to supply the Product. The terms of the contract speak for themselves. Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations regarding Plaintiff's knowledge. Defendant denies any remaining allegations in paragraph 100 of the Complaint.

101. Defendant denies the allegations in paragraph 101 of the Complaint.

102. Answering paragraph 102 of the Complaint, Defendant admits that it entered into a contract with Under Armour to supply the Product. The terms of the contract speak for themselves. Defendant denies any remaining allegations in paragraph 102 of the Complaint.

103. Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 103 and therefore denies same. Defendant denies any remaining allegations of paragraph 103 of the Complaint.

104. Answering paragraph 104 of the Complaint, Defendant admits that promotes Under Armour's product on Cellaint.com. Defendant denies the remaining allegations in paragraph 104 of the Complaint.

105. Defendant denies the allegations in paragraph 105 of the Complaint.

106. Answering paragraph 106 of the Complaint, Defendant admits that American Textile makes bedding. Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 106 and therefore denies same.

107. Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 107 and therefore denies same.

108.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 108 and therefore denies same.

109.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 109 and therefore denies same.

110.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 110 and therefore denies same.

111.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 111 and therefore denies same.

112.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 112 and therefore denies same.

113.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 113 and therefore denies same.

114.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 114 and therefore denies same.

115.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 115 and therefore denies same.

## <u>COUNT I</u>

### (Violation of the Lanham Act 15 U.S.C. § 1125(a)(1)(B))

116.   Defendant incorporates by reference the preceding paragraphs of this Answer as if fully set forth herein.

117.   Paragraph 117 of the Complaint asserts legal conclusions to which no response is required.  To the extent any response is required, Defendant denies the allegations in paragraph 117 of the Complaint.

118.   Defendant denies the allegations in paragraph 118 of the Complaint.

119.   Paragraph 119 of the Complaint asserts legal conclusions to which no response is required.  It is also unclear which specific statements Plaintiff is referring to in this paragraph.  To the extent any response is required, Defendant denies the allegations of paragraph 119 of the Complaint.

120.   Paragraph 120 of the Complaint asserts legal conclusions to which no response is required.  It is also unclear which specific statements Plaintiff is referring to in this paragraph.  To the extent any response is required, Defendant denies the allegations of paragraph 120 of the Complaint.

121.   Paragraph 121 of the Complaint asserts legal conclusions to which no response is required.  It is also unclear which specific statements Plaintiff is referring to in this paragraph.  To the extent any response is required, Defendant denies the allegations in paragraph 121 of the Complaint.

122.   Paragraph 122 of the Complaint asserts legal conclusions to which no response is required.  It is also unclear which specific statements Plaintiff is referring to in this paragraph.  Defendant also lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 122 of the Complaint and therefore denies same.

123.   Paragraph 123 of the Complaint asserts legal conclusions to which no response is required.  To the extent any response is required, Defendant denies the allegations in paragraph 123 of the Complaint.

124.   Paragraph 124 of the Complaint asserts legal conclusions to which no response is required.  To the extent any response is required, Defendant denies the allegations in paragraph 124 of the Complaint.

125.   Paragraph 125 of the Complaint asserts legal conclusions to which no response is required.  To the extent any response is required, Defendant denies the allegations in paragraph 125 of the Complaint.

126.   Paragraph 126 of the Complaint asserts legal conclusions to which no response is required.  To the extent any response is required, Defendant denies the allegations in paragraph 126 of the Complaint.

127.   Paragraph 127 of the Complaint asserts legal conclusions to which no response is required.  To the extent any response is required, Defendant denies the allegations in paragraph 127 of the Complaint.

128.   Paragraph 128 of the Complaint asserts legal conclusions to which no response is required.  To the extent any response is required, Defendant denies the allegations in paragraph 128 of the Complaint.

## COUNT II

### (Intentional Interference with Economic Advantage)

129.   Defendant incorporates by reference the preceding paragraphs of this Answer as if fully set forth herein.

130.   Paragraph 130 of the Complaint asserts legal conclusions to which no response is required.   To the extent any response is required, Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 130 of the Complaint and therefore denies same.

131.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 131 of the Complaint and therefore denies same.

132.   Paragraph 132 of the Complaint is vague as to time.   Answering paragraph 132 of the Complaint, Defendant admits that it was public knowledge Under Armour, Inc. and "Red Wave Global" were working together.

133.   Defendant denies the allegations in paragraph 133 of the Complaint.

134.   Answering paragraph 134 of the Complaint, Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 134 of the Complaint regarding why Under Armour withdrew from negotiations with Plaintiff.   Defendant denies the remaining allegations in paragraph 134 of the Complaint.

135.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 135 of the Complaint and therefore denies same.

136.   Answering paragraph 136 of the Complaint, Defendant admits that it knew that some product development had occurred.  Except as expressly admitted

herein, Defendant denies all remaining allegations set forth in paragraph 136 of the Complaint.

137.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 137 of the Complaint and therefore denies same.

138.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 138 of the Complaint and therefore denies same.

139.   Paragraph 139 of the Complaint asserts legal conclusions to which no response is required.  To the extent any response is required, Defendant denies the allegations in paragraph 139 of the Complaint.

140.   Paragraph 140 of the Complaint asserts legal conclusions to which no response is required.  To the extent any response is required, Defendant denies the allegations in paragraph 140 of the Complaint.

141.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 141 of the Complaint and therefore denies same.

142.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 142 of the Complaint and therefore denies same.

143.   Paragraph 143 of the Complaint asserts legal conclusions to which no response is required.   To the extent any response is required, Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 143 of the Complaint and therefore denies same.

144.   Paragraph 144 of the Complaint asserts legal conclusions to which no response is required.  To the extent any response is required, Defendant denies the allegations in paragraph 144 of the Complaint.

145.   Paragraph 145 of the Complaint asserts legal conclusions to which no response is required.  To the extent any response is required, Defendant denies the allegations in paragraph 145 of the Complaint.

## COUNT III

### (Negligent Interference with Economic Advantage)

146.   Defendant incorporates by reference the preceding paragraphs of this Answer as if fully set forth herein.

147.   Paragraph 147 of the Complaint asserts legal conclusions to which no response is required.   To the extent any response is required, Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 147 of the Complaint and therefore denies same.

148.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in paragraph 148 of the Complaint and therefore denies same.

149.   Paragraph 149 of the Complaint is vague as to time.   Answering paragraph 149 of the Complaint, Defendant admits that it was public knowledge Under Armour, Inc. and "Red Wave Global" were working together.

150.   Defendant denies the allegations in paragraph 150 of the Complaint.

151.   Defendant denies the allegations in paragraph 151 of the Complaint.

152.   Defendant denies the allegations in paragraph 152 of the Complaint.

153.   Defendant denies the allegations in paragraph 153 of the Complaint.

154.   Defendant denies the allegations in paragraph 154 of the Complaint.

155.   Defendant denies the allegations in paragraph 155 of the Complaint.

156.   Defendant denies the allegations in paragraph 156 of the Complaint.

157.   Defendant denies the allegations in paragraph 157 of the Complaint.

67939043.6

## **AFFIRMATIVE DEFENSES**

As for its affirmative defenses to all causes of action purported to be set forth in Plaintiff's Complaint, Defendant alleges as follows.  The Complaint does not describe the claims against Defendant with sufficient particularity to enable Defendant to determine what additional defenses it may have.  Accordingly, Defendant reserves the right to amend this Answer as appropriate and to assert all additional defenses once the claims and/or facts become clear.

### **FIRST AFFIRMATIVE DEFENSE**

### **(Failure to State Cause of Action)**

Each and every purported cause of action of the Complaint alleged against Defendant fails to state facts sufficient to constitute a cause of action against it.

### **SECOND AFFIRMATIVE DEFENSE**

### **(Unclean Hands)**

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

### **THIRD AFFIRMATIVE DEFENSE**

### **(Estoppel)**

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

### **FOURTH AFFIRMATIVE DEFENSE**

### **(Laches)**

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

### **FIFTH AFFIRMATIVE DEFENSE**

### **(Waiver)**

Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of waiver.

67939043.6

## SIXTH AFFIRMATIVE DEFENSE

### (No Duty)

Plaintiff's third cause of action for negligent interference with prospective economic advantage is barred, in whole or in part, by the fact that Defendant does not owe Plaintiff any legal duty.

## SEVENTH AFFIRMATIVE DEFENSE

### (Acts of Third Parties and/or Plaintiff)

If Plaintiff did sustain any damages as alleged in the Complaint, that damage, injury or loss, if any, was proximately caused or contributed to, in whole or in part, by the conduct of Plaintiff, or other persons or entities (whether or not a party to this lawsuit) other than Defendant.

## EIGHTH AFFIRMATIVE DEFENSE

### (Causation)

Defendant is not liable to Plaintiff, in whole or in part, because any losses that Plaintiff allegedly suffered because none of the conduct attributed to Defendant proximately caused the injuries alleged, and any such causation was superseded by the conduct of Plaintiff and/or third parties and/or circumstances beyond the control of Defendant, thus barring or diminishing any recovery against Defendant.

## NINTH AFFIRMATIVE DEFENSE

### (Adequate Remedy)

The Complaint, its causes of action, and its remedies for injunctive relief and restitution are barred in light of the fact that Plaintiff has a legal remedy, specifically money damages.  Further, Plaintiff is not entitled to equitable relief that duplicates any legal relief it may receive.

67939043.6

## TENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

Plaintiff failed to mitigate any purported damages.  As such, any recovery by Plaintiff must be diminished by the amount of damages they could have reduced if it timely and appropriately acted to mitigate damages.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Standing)

Plaintiff's claims are barred, in whole or in part, because it lacks standing to pursue the allegations in the Complaint.

## TWELFTH AFFIRMATIVE DEFENSE

### (Setoff)

Plaintiff's purported damages, if any, must be setoff by any damages caused by Plaintiff.

Defendant reserves the right to add such further defenses as may be warranted by the information developed through discovery.

## PRAYER

WHEREFORE, having fully answered the Complaint, Defendant respectfully prays as follows:

A.    That Plaintiff takes nothing by way of its Complaint;

B.    That judgment be entered in favor of Defendant and against Plaintiff on the Complaint as a whole;

C.    That Defendant be awarded attorneys' fees and costs of suit as may be appropriate under applicable statutes;

D.    That the Court award Defendant such other relief as the Court may deem appropriate.

## JURY DEMAND

Defendant demands a trial by jury on any of Plaintiff's claims triable to a jury.

## COUNTERCLAIM

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Counterclaimant Hologenix, LLC ("Hologenix") states and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Counterclaimant Hologenix is a Delaware limited liability company that is headquartered in Santa Monica, California.   Hologenix's members are citizens of California, Colorado, New York, Puerto Rico and the European Union.

2.      Upon information and belief, Counter-Defendant Multiple Energy Technologies, LLC ("MET") is a Delaware limited liability company, having its principal place of business at 470 Johnson Road, Suite 220, Meadow Pointe Plaza, Washington, PA 15301 and domiciled in Pennsylvania.

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121.

4.      This Court may properly exercise personal jurisdiction over MET because MET has done business and entered into contracts in California, and MET purposely availed itself of the laws of California by, among other things, filing the underlying action in this district.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, and MET filed the underlying action in this District.

### FACTUAL ALLEGATIONS

6.      Hologenix manufactures, promotes and sells a bioceramic product called Celliant™, which is a proprietary mineral matrix that can be embedded into the core of a yarn or applied to a wide variety of fabrics.

7.      Hologenix sells Celliant as both a powder and a fiber that can be incorporated into a extensive range of products, including technical outerwear, athletic wear, base layer, wetsuits, bedding, equestrian apparel, insulations, veterinary products and furniture.

8.     The FDA has determined that Celliant products are medical devices as defined in section 201(h) of the Federal Food, Drug and Cosmetic Act and are general wellness products.  Celliant is also designated as a Class 1 Medical Device in Canada, the European Union, Australia, and New Zealand.

9.     Upon information and belief, MET manufactures, promotes and sells a bioceramic powder branded as "Redwave™".

10.     Upon information and belief, MET also manufactures, promotes and sells a bioceramic powder branded as "Biopower™".

11.     Upon information and belief, MET operates separate websites for the Redwave and Biopower brands.

12.     Upon information and belief, Redwave and Biopower are the same product, just branded differently.  Redwave and Biopower are collective referred to herein as the "MET Product."

13.     MET claims that the MET Product is based on Far Infrared Technology ("FIR").

## MET's Deceptive and Misleading Claims

14.     Upon information and belief, MET is and has been operating an Internet web site under the domain name http://redwaveglobal.com where it advertises and offers the MET Product for sale to businesses and consumers.

15.     Upon information and belief, MET is and has been operating an Internet web site under the domain name http://biopower-usa.com where it advertises and offers the MET Product for sale to businesses and consumers.

16.     MET has attempted to differentiate the MET Product from other bioceramics materials and products, like Celliant, through deceptive, false and misleading statements about its products.

17.     For example, MET makes the following claims about the MET Product on the Redwave website at https://redwaveglobal.com:

a.     Through meticulous lab work and experimentation, we took what we already knew about FIR and some insights of our own and fine-tuned it into a more powerful, more effective solution.

b.     Our proprietary formula concentrates this power, delivering a far more potent exposure to the FIR's therapeutic rays.

(last visited April 9, 2019).

18.     Similarly, on the Biopower website, MET references the purported Brazilian origin of the MET Product to imply the MET Product is superior to other bioceramics:

The journey to establish BIOPOWER™ took us to the Amazon in Brazil where we mined our core ingredient, bioceramics, that became the foundation of our proprietary patent pending formula. Bioceramics, often used in surgical implants, are ultra-fine mineral particles that have the proven ability to reflect and emit far infrared, enhancing the body's physiological recovery process. MET further refines its bioceramics into a powder preserving these compelling benefits. This supercharged powder can then be incorporated into thousands of therapeutic delivery formats.

http://biopower-usa.com/technology/#about-tech (last visited April 9, 2019).

19.     MET also claims that the MET Product uses a specialized "vibrational technology" that enhances the effects of FIR:

BIOPOWER™ is an integrated technology engineered to harness the powerful effects of far-Infrared enhanced by vibrational technology.

http://biopower-usa.com/about/#about-us (last visited April 9, 2019).

20.     Despite making claims about the specialized nature of the MET Product because of MET's proprietary formula, Brazilian-sourced bioceramic material and "vibrational technology", MET only supports these claims with generalized science regarding FIR technology.

21.     MET fails to offer any scientific support for its claims that the MET Product is more potent than other bioceramics.

22.     MET fails to offer any scientific support for its claims that the MET Product is more potent or effective because it sources its bioceramics materials in Brazil.

67939043.6

23.     MET fails to offer any scientific support for its claims that "vibrational technology" makes the MET Product more powerful.

24.     MET's representations and claims regarding the MET Product being superior to other bioceramics products because of MET's proprietary formula, Brazilian-sourced bioceramic material and "vibrational technology", are false and misleading.

25.     MET knew or should have known that its representations regarding the MET Product being superior to other bioceramics products because of MET's proprietary formula, Brazilian-sourced bioceramic material and "vibrational technology" were false and unsupported by any scientific evidence or studies.

26.     MET's claims regarding the MET Product being superior to other bioceramic materials or products, like Celliant, because of MET's proprietary formula, Brazilian-sourced bioceramic material and "vibrational technology" are misleading because they have a tendency to deceive a substantial segment of its audience.

27.     MET's deception regarding the superiority of the MET Product to other bioceramic materials and products, like Celliant, is material in that it is likely to influence purchasing decisions by consumers and other interested in manufacturing products using bioceramic materials like the MET Product or Celliant.

28.     MET caused its false statements regarding the MET Product being superior to other bioceramic materials or products to enter interstate commerce by publishing these statements on the Biopower and Redwave websites.

**MET's Products are Unregistered and Unapproved Medical Devices**

29.     MET has advertised and continues to advertise the claimed benefits of the MET Products on the Redwave and Biopower websites.

ANSWER TO COMPLAINT AND COUNTERCLAIM
Case No. 2:19-cv-01483-PA-RAO

67939043.6

30. Specifically, MET also makes a number of representations about the MET Product's effect on physical and disease endpoints, which seek to create the impression that the MET Products are effective at achieving these endpoints.

31. Specifically, MET states on Biopower's website that:

> Products powered with BIOPOWER™ have the unique ability to help improve biological functions. BIOPOWER™ is designed to help the body restore itself and generate natural energy by increasing cellular metabolism, inducing analgesia, promoting muscle relaxation, and decreasing inflammation and oxidative stress.

http://biopower-usa.com/about/ (last visited April 9, 2019).

32. MET also claims that the MET Product allows the body "to recover and heal quicker." *See* http://biopower-usa.com/technology/ (last visited April 9, 2019).

33. Additionally, MET claims on Redwave's website that the MET Product is "for anyone looking for preventative measures to stay healthy." *See* https://redwaveglobal.com/ (last visited April 9, 2019).

34. Products which have an intended use to treat or prevent disease, and which do not achieve their primary intended purposes through chemical action within or on the body, and which are not dependent on being metabolized for the achievement of their primary intended purposes, are medical devices under section 201(h) of the Federal Food, Drug, and Cosmetic Act (codified at 21 USC § 321(h)).

35. Pursuant to Section 510(k) of the Food, Drug and Cosmetic Act, device manufacturers that are not subject to Premarket Approval requirements must notify FDA of their intent to market a medical device at least 90 days in advance. This is known as Premarket Notification - also called PMN or 510(k).

36. A 510(k) is a premarket submission made to FDA to demonstrate that the device to be marketed is at least as safe and effective, that is, substantially equivalent, to a legally marketed device that is not subject to premarket approval.

67939043.6

37.     A medical device cannot be marketed without some form of premarket review by the FDA, known as a 510k clearance, unless the device is exempt from review requirements.

38.     MET did not obtain a 510k clearance for the MET Product.

39.     MET's medical device is not exempt from 510k clearance requirements.

40.     Because the MET Product is a medical device based on MET's representations about its efficacy in achieving certain physical and disease endpoints and MET did not obtain a 510k clearance for the MET Product, it does not comply with the FDA's medical device requirements.

41.     MET knew or should have known that its claims regarding the efficacy of the MET Product in achieving certain physical and disease endpoints were misleading because it knew that the MET Product had not been approved as a medical device by the FDA.

42.     MET's claims regarding the efficacy of the MET Product in achieving certain physical and disease endpoints were misleading because they have a tendency to deceive a substantial segment of its audience into believing that the MET Product was a medical device approved by the FDA.

43.     MET's deception is material in that it is likely to influence purchasing decisions by consumers and other interested in manufacturing products using bioceramic materials like the MET Product or Celliant.

44.     MET caused its false statements regarding the MET Product being a medical device approved by the FDA to enter interstate commerce by publishing these statements on the Biopower and Redwave websites.

### MET Lacks  Substantiation for its Claims

45.    In addition to making health-related claims regarding the MET Product, which cannot be made absent FDA approval, MET also lacks adequate substantiation for these claims.

46.    Even if MET's claims regarding the efficacy of the MET Product on disease were permissible by the FDA, the Federal Trade Commission ("FTC") requires adequate substantiation prior to using these, or any other, claims in marketing materials, including the Redwave and Biopower websites.

47.    Upon information and belief, MET does not have sufficient scientific substantiation for its claims regarding the efficacy of the MET Product.

48.    On the Biopower website, MET has made available six studies on the MET Product and one FIR literature review.

49.    The MET Product studies are color-coded to associate each one with particular claims and indications, such as "analgesic," "anti-inflammatory," and "sports".  This color coding necessarily suggests to the reader that the MET Product studies substantiate the identified claims and indications.

50.    The MET Biopower studies are insufficient to substantiate MET's claims and indications for the MET Product.

51.    On the Biopower website, MET identifies three studies as supporting its claims that the MET Product is "analgesic" and "anti-inflammatory."   All three of these studies were conducted in mice or rats.

52.    On the Biopower website, MET identifies three studies as supporting its claims that the MET Product provides a benefit with respect to "sports."

53.    The studies that MET identified as supporting the MET Product's beneficial effects on people engaged in "sports" examine such endpoints as physical performance generally, balance, flexibility, grip strength, and respiratory capacity. All of these claims create a general impression that the MET Product offers benefits for people engaged in athletics, or even generally in vigorous physical activity.

54.     Of the three studies that MET identifies as supporting the MET Product's beneficial effects on people engaged in "sports" one of these is a rodent study and two are human studies with extremely small sample sizes, one involving 17 subjects and one involving 9-12 subjects.

55.     MET identifies all six studies as supporting the MET Product generally.

56.     Rodent studies are not competent and reliable scientific evidence to substantiate claims for product benefits relating to human performance because advertising and claims regulators (which include not only the FDA, but also the FTC and state regulators) would not generally accept studies in rodents as sufficient proof of behavior in humans.

57.     Studies with extremely small sample sizes (thirty or less) are insufficient, standing alone, to support claims about the benefits of the MET Product for people engaged in athletics or other vigorous activity.

58.     Moreover,  one of the human study's used to support MET's claim that the MET Product provided benefits for people engaged in athletics examined benefit after 5 months of wear, while the other involved a period of "extended wear" (i.e., 7 days/week throughout the day).  These use patterns are not what would be expected for a typical consumer purchasing athletic apparel and thus the results are not conclusive for the general population.

59.     Given the limitations on the sample sizes and study subjects, the six studies MET identifies to support its claims regarding the benefits of the MET Product on humans can only be considered illustrative, and must be viewed in conjunction with the wide body of literature on FIR, generally, in order to substantiate MET's claims regarding the MET Product.

60.     MET makes numerous other claims about the benefits of the MET Product for which it does not identify any supporting studies.  For example, MET

does not identify any of the studies on its website as supporting MET's claims of the efficacy of the MET Product on "healing" or "prevention."

61.     Upon information and belief, there are no scientific studies that support MET's claims of the efficacy of the MET Product on "healing" or "prevention."

62.     MET makes numerous claims that differentiate the MET Product from, and imply the MET Product is superior to other bioceramics materials and products, including Celliant.  None of the studies available on the MET website compare the MET Product to any other FIR products.

63.     Upon information and belief, MET there is no evidence comparing the characteristics of the MET Product to any other bioceramic materials or products.

64.     Nonetheless, MET states on the Biopower website that:

> "Well documented, tested and proven in numerous medical and scientific publications, far infrared has been shown to support an increase in cellular metabolism, fight inflammation, promote cell energy and reduce oxidative stress.  Ultimately, by working with you, BIOPOWER™ helps promote recovery from life's daily activities, allowing the body to return to a healthy state."

http://biopower-usa.com/technology/#about-tech (last visited April 10, 2019).

65.     Reliance on the extensive scientific literature on FIR, generally, and not on studies specifically examining the MET Product when compared to other bioceramic materials or products, is insufficient to substantiate MET's claims that there is anything unique or different about the MET Product in comparison with Celliant or any other FIR or bioceramic technology.

66.     At the time MET made the deceptive representations about the MET Product, it knew or should have known that it did not have sufficient data to substantiate these representations, making MET's representations deceptive and misleading.

67.     MET's false and misleading claims about the MET Product have been repeated in the press and by physicians.

68.     On November 21, 2017, an article was published on prnewswire.com that repeated a number of the false and misleading statements about the MET Product, including:

    a.  a statement by MET's Chair of its Technology Committee, Dr. Alan Letton, which stated that "By harnessing the physiological benefits of Far Infrared, we created therapeutic apparel able to improve health as it's worn – making recovering from an all-out effort faster, easier, and more efficient";

    b.  a statement by Dr. Vaugh McCall, who specializes in psychiatry and health behavior at the Medical College of George, which stated "How one sleeps at night affects focus, performance, and overall functioning during the following day. Using Redwave's technology, this new line works to restore the body, assuring you'll rest easy and wake up refreshed."

https://www.prnewswire.com/news-releases/redwave-global-announces-partnership-with-under-armour-inc-300559537.html

69.     These statements were repeated in other media publications, including in an article by Obi Anyanwu on fashionnetwork.com.  *See* https://us.fashionnetwork.com/news/Under-Armour-partners-with-Redwave-for-sleepwear-collection,894050.html#.XK0rrlVKhEY.

70.     MET's claims regarding the MET Product being superior to other bioceramic materials or products, like Celliant, based on general FIR research and studies has a tendency to deceive a substantial segment of its audience.

71.     MET's deception regarding scientific evidence of the superiority of the MET Product to other bioceramic materials and products, like Celliant, is material in that it is likely to influence purchasing decisions by consumers and other

67939043.6

1    interested in manufacturing products using bioceramic materials like the MET
2    Product or Celliant.

3         72.    MET caused its false statements regarding the MET Product being
4    superior to other bioceramic materials or products to enter interstate commerce by
5    publishing these statements on the Biopower and Redwave websites.

6         73.    MET and Hologenix are in direct competition with each other because
7    the MET Product and Celliant are comparable.

8         74.    Upon information and belief, MET has realized and continues to
9    realize an unfair competitive advantage due to its use of false and deceptive
10   advertisements, which violates federal and state law.

11                                  <u>**COUNT I**</u>

12            **(Violation of the Lanham Act (15 U.S.C. § 1125(a)(1)(B))**

13        75.    Plaintiff incorporates by reference the preceding paragraphs of this
14   Counterclaim as if fully set forth herein.

15        76.    MET falsely and/or misleadingly represents facts related to the MET
16   Product to customers, potential customers, and members of the public.

17        77.    MET's representations are literally false or are otherwise misleading
18   and deceptive and serve to disparage Hologenix's products.

19        78.    Such representations of fact, undertaken in commercial advertising or
20   promotion, misrepresent the nature, characteristics, or qualities of Hologenix's and
21   MET's goods, services, and/or commercial activities and are false and misleading,
22   in that, for example, MET's representations give the impression that the MET
23   Product is more potent than Celliant, is approved by the FDA to treat certain
24   diseases and is substantiated by scientific studies.

25        79.    MET's representations actually, or are likely to, deceive a substantial
26   segment of their intended audience of potential customers and customers of
27   bioceramic products, as well as the public.

28

---

80.   MET's representations are material in their effects on the purchasing decisions of potential customers and customers of bioceramic products. These representations have influenced, and will continue to influence, purchasing decisions of such customers and potential customers.

81.   MET has caused its false and/or misleading advertisements and representations to enter interstate commerce in that it provides the MET Product nationwide and has published these false and/or misleading advertisements and representations online.

82.   MET's false and misleading representations are acts of false advertising, product disparagement, and unfair competition in violation of the Lanham Act.

83.   The acts of MET have been committed with intent to cause confusion and mistake, and with knowledge of their wrongful nature.

84.   The false advertising, product disparagement, and unfair trade practices by MET are intentional and willful.

85.   As a direct and proximate result of MET's actions, Hologenix has been and will continue to be severely injured in its business and property through lost opportunities, profits, and otherwise, that would have been available to Hologenix had MET accurately and truthfully represented the capabilities of the MET Product and how the MET Product compares to Hologenix's products.

86.   In addition to the injury to Hologenix, as a direct and proximate result of MET's actions, the public has been and will continue to be harmed and negatively affected in that it has and continues to receive false and/or misleading information about the MET Product and how it compares to Hologenix's Products.

87.   Hologenix is entitled to an injunction to prevent MET from continuing to brazenly make the aforementioned false, misleading and unsubstantiated representations, and to correct the false impression left by MET's deception.

88.    Because this is an exceptional case involving calculated and willful misconduct by MET, Hologenix is entitled to recover up to three times the amount of actual damages and attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Hologenix respectfully requests that the Court enter judgment in its favor as follows:

A.    Preliminarily and permanently enjoining MET, its agents, representatives, employees, assigns, and all persons acting in concert or privity with it, from falsely advertising or making misleading and unsubstantiated representations related to the MET Product and how it compares to Hologenix's products, and other bioceramic products;

B.    Issuing a permanent injunction ordering that MET, at its own expense, engage in appropriate corrective advertising designed to reach all persons to whom the false and misleading statements made by MET were directly or indirectly disseminated, and retracting the false and misleading statements previously made;

C.    Awarding Hologenix monetary damages sufficient to compensate it for losses sustained on account of MET's unlawful conduct as alleged above;

D.    Awarding Hologenix MET's profits derived by reason of the unlawful acts complained of, as provided by law;

E.    Awarding Hologenix punitive and/or treble damages;

F.    Awarding Hologenix reasonable attorneys' fees, prejudgment interest, and costs of this action as provided by law; and

G.    Awarding Hologenix any other relief that the Court deems just and equitable.

Dated:  April 12, 2019

**POLSINELLI LLP**

By:    _/s/ Noel Cohen_
      Noel S. Cohen
      _Attorneys for Defendant and_
      _Counterclaimant Hologenix, LLC._

## CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:**

At the time of service, I was over 18 years of age and not a party to this action. I am employed at Polsinelli LLP in the County of Los Angeles, State of California. My business address is 2049 Century Park East, Suite 2900, Los Angeles, California, 90067.

On April 12, 2019, I served true copies of the following document(s) described as

**DEFENDANT'S ANSWER TO COMPLAINT AND COUNTERCLAIM**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 12, 2019, at Los Angeles, California.

/s/ *Jill Serena*
Jill Serena

67939043.6