# Exhibit A

The 21st Century Cures Act (12/13/2016) amended the definition of "device" in the Food, Drug and Cosmetic Act to exclude certain software functions, including some described in this guidance document.  FDA is assessing how to revise this guidance to represent our current thinking on this topic. For additional information, contact digitalhealth@fda.hhs.gov or refer to https://www.fda.gov/MedicalDevices/DigitalHealth/default.htm.

*Contains Nonbinding Recommendations*

# General Wellness: Policy for Low Risk Devices
# Guidance for Industry and Food and Drug Administration Staff

**Document issued on: July 29, 2016.**

**The draft of this document was issued on January 20, 2015.**

For questions about this document regarding CDRH-regulated devices, contact Bakul Patel at 301-796-5528 or by electronic mail at Bakul.Patel@fda.hhs.gov or contact the Office of the Center Director at 301-796-5900.



**U.S. Department of Health and Human Services**
**Food and Drug Administration**

**Center for Devices and Radiological Health**

*Contains Nonbinding Recommendations*

# Preface

## Public Comment

You may submit electronic comments and suggestions at any time for Agency consideration to http://www.regulations.gov . Submit written comments to the Division of Dockets Management, Food and Drug Administration, 5630 Fishers Lane, Room 1061, (HFA-305), Rockville, MD 20852. Identify all comments with the docket number FDA-2014-N-1039. Comments may not be acted upon by the Agency until the document is next revised or updated.

## Additional Copies

Additional copies are available from the Internet.  You may also send an e-mail request to CDRH-Guidance@fda.hhs.gov to receive copy of the guidance.  Please use the document number 1300013 to identify the guidance you are requesting.

*Contains Nonbinding Recommendations*

# Table of Contents

I. INTRODUCTION ..........................................................................................................................1
II. POLICY ON LOW RISK GENERAL WELLNESS PRODUCTS .........................................................2
III. GENERAL WELLNESS PRODUCTS............................................................................................2
IV. DETERMINING RISK FOR GENERAL WELLNESS PRODUCTS ....................................................5
V. EXAMPLES OF LOW RISK GENERAL WELLNESS DEVICES.......................................................6
VI. DETERMINING WHETHER GENERAL WELLNESS PRODUCTS ARE WITHIN SCOPE OF THE
    GUIDANCE ................................................................................................................................9

*Contains Nonbinding Recommendations*

# General Wellness: Policy for Low Risk Devices

# Guidance for Industry and Food and Drug Administration Staff

*This guidance represents the current thinking of the Food and Drug Administration (FDA) on this topic.  It does not establish any rights for any person and is not binding on FDA or the public.  You can use an alternative approach if it satisfies the requirements of the applicable statutes and regulations.  To discuss an alternative approach, contact the FDA staff or Office responsible for this guidance as listed on the title page.*

## I.     Introduction

The Food and Drug Administration (FDA) is issuing this guidance document to provide clarity to industry and FDA staff on the Center for Devices and Radiological Health's (CDRH's) compliance policy for low risk products that promote a healthy lifestyle (general wellness products).[1] This guidance does not apply to products (e.g., drugs, biologics, dietary supplements, foods, or cosmetics) regulated by other FDA Centers or to combination products.[2]

FDA's guidance documents, including this guidance, do not establish legally enforceable responsibilities.  Instead, guidances describe the Agency's current thinking on a topic and should be viewed only as recommendations, unless specific regulatory or statutory requirements are cited. The use of the word *should* in Agency guidance means that something is suggested or recommended, but not required.

---

[1] This guidance does not change or rescind any requirements of the Federal Food, Drug, and Cosmetic Act (FD&C Act) or any applicable regulations. This guidance also does not preclude FDA from consulting with the Consumer Product Safety Commission (CPSC) as to whether a general wellness product is a consumer product under CPSC's authority or a device. FDA may coordinate with other agencies and authorities, such as the CPSC, to determine jurisdiction over products.  If a product is a device under section 201(h) of the FD&C Act, it is generally excluded from CPSC's authority over "consumer products" under the Consumer Product Safety Act (15 U.S.C. § 2052(a)(5)(ii)(H)).  However, CPSC and FDA may both have jurisdiction over certain medical devices under other statutory authorities the CPSC administers.

[2] For determinations on combination products, contact the Office of Combination Products at combination@fda.gov. See 21 CFR 3.2(e) for the definition of a combination product.

1

*Contains Nonbinding Recommendations*

## II.  Policy on Low Risk General Wellness Products

CDRH does not intend to examine low risk general wellness products to determine whether they are devices[3] within the meaning of the FD&C Act or, if they are devices, whether they comply with the premarket review and post-market regulatory requirements for devices under the FD&C Act and implementing regulations, including, but not limited to: registration and listing and premarket notification requirements (21 CFR Part 807); labeling requirements (21 CFR Part 801 and 21 CFR 809.10); good manufacturing practice requirements as set forth in the Quality System regulation (21 CFR Part 820); and Medical Device Reporting (MDR) requirements (21 CFR Part 803).

For purposes of this guidance, CDRH defines **general wellness products** as products that meet the following two factors:  (1) are intended for <u>only</u> general wellness use, as defined in this guidance, and (2) present a low risk to the safety of users and other persons.  General wellness products may include exercise equipment, audio recordings, video games, software programs[4] and other products that are commonly, though not exclusively, available from retail establishments (including online retailers and distributors that offer software to be directly downloaded), when consistent with the two factors above.

CDRH regularly receives inquiries about whether particular products are devices as defined by the FD&C Act.  There are instances where certain general wellness products, as discussed in this guidance, do not meet the definition of a device under section 201(h) of the FD&C Act and therefore are not subject to the FD&C Act's regulatory requirements for devices. We have included examples of these kinds of products to illustrate the scope of this guidance, rather than to suggest they meet the device definition.

A product's inclusion under the general wellness policy in this guidance does not establish that it has been shown to be safe and/or effective for its intended use.

## III.  General Wellness Products

A **general wellness product**, for the purposes of this guidance, has (1) an intended use that relates to maintaining or encouraging a general state of health or a healthy activity, or (2) an intended use that relates the role of healthy lifestyle with helping to reduce the risk or impact

---

[3] The term "device" is defined in 201(h) of the FD&C Act to include an "instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is …intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man … or intended to affect the structure or any function of the body of man..."

[4] For more discussion regarding FDA's regulatory approach towards certain mobile medical applications, see the FDA Guidance: Mobile Medical Applications, issued on February 9, 2015, available at http://www.fda.gov/downloads/MedicalDevices/DeviceRegulationandGuidance/GuidanceDocuments/UCM263366.pdf.

*Contains Nonbinding Recommendations*

of certain chronic diseases or conditions and where it is well understood and accepted that healthy lifestyle choices may play an important role in health outcomes for the disease or condition.

If the product's intended uses are not limited to the above general wellness intended uses, this guidance does not apply.

The first category of general wellness intended uses involve claims about sustaining or offering general improvement to functions associated with a general state of health that **do not make any reference to diseases or conditions**.  For the purposes of this guidance, this first category of general wellness claims relate to:

- weight management,
- physical fitness, including products intended for recreational use,
- relaxation or stress management,
- mental acuity,
- self-esteem (e.g., devices with a cosmetic function that make claims related only to self-esteem),
- sleep management, or
- sexual function.

The following are examples of this category of general wellness claims:

- Claims to promote or maintain a healthy weight, encourage healthy eating, or assist with weight loss goals;
- Claims to promote relaxation or manage stress;
- Claims to increase, improve, or enhance the flow of qi "energy";
- Claims to improve mental acuity, instruction following, concentration, problem-solving, multitasking, resource management, decision-making, logic, pattern recognition or eye-hand coordination;
- Claims to enhance learning capacity;
- Claims to promote physical fitness, such as to help log, track, or trend exercise activity, measure aerobic fitness, improve physical fitness, develop or improve endurance, strength or coordination, or improve energy;
- Claims to promote sleep management, such as to track sleep trends;
- Claims to promote self-esteem, such as to boost self-esteem;
- Claims that address a specific body structure or function, such as to increase or improve muscle size or body tone, tone or firm the body or muscle, or enhance or improve sexual performance;
- Claims to improve general mobility or to assist individuals who are mobility impaired in a recreational activity (e.g., sport wheelchairs, beach access wheelchairs); and
- Claims to enhance an individual's participation in recreational activities by monitoring the consequences of participating in such activities, such as to monitor heart rate or monitor frequency or impact of collisions.

3

*Contains Nonbinding Recommendations*

The following are examples of claims that <u>do not</u> fall into this category of general wellness claims:

- A claim that a product will treat or diagnose obesity;
- A claim that a product will treat an eating disorder, such as anorexia;
- A claim that a product helps treat an anxiety disorder;
- A claim that a computer game will diagnose or treat autism;
- A claim that a product will treat muscle atrophy or erectile dysfunction;
- A claim to restore a structure or function impaired due to a disease or condition, e.g., a claim that a prosthetic device enables amputees to walk.[5]

The second category of general wellness intended uses relate to sustaining or offering general improvement to functions associated with a general state of health while **making reference to diseases or conditions**.  For the purposes of this guidance, this second category of general wellness claims is comprised of two subcategories:

1) intended uses to promote, track, and/or encourage choice(s), which, as part of a healthy lifestyle, **may help to reduce the risk of** certain chronic diseases or conditions; and

2) intended uses to promote, track, and/or encourage choice(s) which, as part of a healthy lifestyle, **may help living well with** certain chronic diseases or conditions.

Both subcategories of disease-related general wellness claims should only be based on references where it is well understood that healthy lifestyle choices may reduce the risk or impact of a chronic disease or medical condition. That is, the claim that the healthy lifestyle choice(s) may play an important role in health outcomes should be generally accepted; such associations are described in peer-reviewed scientific publications or official statements made by healthcare professional organizations.[6] Examples of chronic diseases for which a healthy lifestyle is associated with risk reduction or help in living well with that disease include heart disease, high blood pressure, and type 2 diabetes.

The following are examples of this category of disease-related general wellness claims:

- Software Product U coaches breathing techniques and relaxation skills, which, as part of a healthy lifestyle, may help living well with migraine headaches.
- Software Product V tracks and records your sleep, work and exercise routine which, as part of a healthy lifestyle, may help living well with anxiety.

---

[5] Products intended to restore a structure or function impaired due to a disease might be regulated by FDA as devices.  For example, an artificial limb prosthesis intended to provide disabled persons the ability to walk might be regulated under 21 CFR 890.3420 or 21 CFR 890.3500.

[6] By organizations we mean associations and colleges such as American Medical Association (AMA), American heart association (AHA), American Association of Clinical Endocrinologists (AACE), American College of Rheumatology, etc.

4

*Contains Nonbinding Recommendations*

- Product W promotes making healthy lifestyle choices such as getting enough sleep, eating a balanced diet and maintaining a healthy weight, which may help living well with type 2 diabetes.
- Product X promotes physical activity, which, as part of a healthy lifestyle, may help reduce the risk of high blood pressure.
- Software Product Y tracks your caloric intake and helps you manage a healthy eating plan to maintain a healthy weight and balanced diet. Healthy weight and balanced diet may help living well with high blood pressure and type 2 diabetes.
- Product Z tracks activity sleep patterns and promotes healthy sleep habits, which, as part of a healthy lifestyle, may help reduce the risk for developing type 2 diabetes.

# IV. Determining Risk for General Wellness Products

CDRH's general wellness policy applies only to general wellness products that are low risk.[7] If the answer to any of the following questions is YES, the product is <u>not</u> low risk and is not covered by this guidance.

1) Is the product invasive[8]?
2) Is the product implanted?
3) Does the product involve an intervention or technology that may pose a risk to the safety of users and other persons if specific regulatory controls are not applied, such as risks from lasers or radiation exposure?

In assessing whether a product is low risk for purposes of this guidance, FDA recommends that you also consider whether CDRH actively regulates products of the same type as the product in question. For example, CDRH actively regulates external penile rigidity devices, which are devices intended to create or maintain sufficient penile rigidity for sexual intercourse, under 21 CFR 876.5020 as class II devices exempt from premarket notification with special controls. The special controls for these devices address risks to health that are associated with the use of these devices, including, without limitation, tissue injury, trauma or infection.[9] Therefore, these types of devices would not be considered low risk general wellness products.

The following are examples of products that would <u>not</u> be considered "low risk" as described in this guidance:

---

[7] Whether a device is classified as class I under section 513(a)(1) of the FD&C Act does not necessarily mean that it is "low risk" for purposes of this guidance.

[8] For purposes of this guidance, "invasive" means penetrates or pierces the skin or mucous membranes of the body.

[9] See the FDA Guidance: Class II Special Controls Guidance Document: External Penile Rigidity Devices, issued on December 28, 2004, available at
http://www.fda.gov/medicaldevices/deviceregulationandguidance/guidancedocuments/ucm072098.htm.

*Contains Nonbinding Recommendations*

- Sunlamp products promoted for tanning purposes, due to risks to a user's safety from the ultraviolet radiation, including, without limitation, an increased risk of skin cancer.[10]
- Implants promoted for improved self-image or enhanced sexual function. Implants pose risks to users such as rupture or adverse reaction to implant materials and risks associated with the implantation procedure.
- A laser product that claims to improve confidence in user's appearance by rejuvenating the skin. Although the claims of rejuvenating the skin and improving confidence in user's appearance are general wellness claims, laser technology presents risks of skin and eye burns.
- A neurostimulation product that claims to improve memory, due to the risks to a user's safety from electrical stimulation.
- A product that claims to enhance a user's athletic performance by providing suggestions based on the results of relative lactic acid testing, when the product uses venipuncture to obtain the blood samples needed for testing.  Such a product is not low risk because it is invasive (e.g., obtains blood samples by piercing the skin) and also because the product involves an intervention that may pose a risk to the safety of the user and other persons if specific regulatory controls are not applied (e.g., venipuncture may pose a risk of infection transmission).

# V. Examples of Low Risk General Wellness Devices

*Illustrative Example 1:*  A mobile application plays music to "soothe and relax" an individual and to "manage stress."

> These claims relate only to relaxation or stress management, not to any disease or medical condition, and thus are general wellness claims.  In addition, the technology to play music does not pose a risk to the safety of users and other persons if specific regulatory controls are not applied. Therefore, this product meets both factors for a low risk general wellness product.

*Illustrative Example 2:*  A mobile application that solely monitors and records daily energy expenditure and cardiovascular workout activities to "allow awareness of one's exercise activities to improve or maintain good cardiovascular health."

> This claim relates to a specific organ only in the context of general health and does not refer to a disease or medical condition.  In addition, although the monitoring or recording of exercise activities present risks (such as inaccuracy), when made in the absence of disease or medical condition claims, the technology does not pose a risk to

---

[10] See Final Order reclassifying UV lamps intended to tan the skin from class I exempt from premarket notification to class II (special controls):General and Plastic Surgery Devices: Reclassification of Ultraviolet Lamps for Tanning, Henceforth To Be Known as Sunlamp Products and Ultraviolet Lamps Intended for Use in Sunlamp Products, available at
https://www.federalregister.gov/articles/2014/06/02/2014-12546/general-and-plastic-surgery-devices-reclassification-of-ultraviolet-lamps-for-tanning-henceforth-to

6

*Contains Nonbinding Recommendations*

> the safety of users and other persons if specific regulatory controls are not applied. Therefore, this product meets both factors for a low risk general wellness product.

*Illustrative Example 3:* A mobile application monitors and records food consumption to "manage dietary activity for weight management and alert the user, healthcare provider, or family member of unhealthy dietary activity."

> This claim relates to dietary choices and weight management, and thus is a general wellness claim. In addition, the technology for monitoring or recording food consumption does not pose a risk to the safety of users and other persons if specific regulatory controls are not applied. Therefore, this product meets both factors for a low risk general wellness product.

*Illustrative Example 4:* A mobile application that reminds users to keep exposed skin out of direct sunlight when the UV index is high, which, as part of a healthy lifestyle, may help reduce the risk of skin cancer.

> This claim relates to tracking preventive measures which, as part of a healthy lifestyle, may help reduce the risk of a medical condition. The claim is for a healthy lifestyle choice and it is generally accepted that the choice may play an important role in health outcomes. Thus, it is a general wellness claim. In addition, the technology reminding users to keep exposed skin out of direct sunlight does not pose a risk to the safety of users and other persons if specific regulatory controls are not applied. Therefore, this product meets both factors for a low risk general wellness product.

*Illustrative Example 5:* A portable product that is intended to monitor the pulse rate of users during exercise and hiking.

> This claim relates only to exercise and hiking and does not refer to a disease or medical condition. Thus, it is a general wellness claim. In addition, the technology for monitoring pulse rate does not pose a risk to the safety of users and other persons if specific regulatory controls are not applied. Therefore, this product meets both factors for a low risk general wellness product.

*Illustrative Example 6:* A product is intended to mechanically exfoliate the face, hands and feet to make the skin smoother and softer. The product cannot be used in a manner that penetrates or pierces the skin.

> This claim relates to self-esteem and does not refer to a specific disease or medical condition, and thus is a general wellness claim. In addition, the product is noninvasive as it does not penetrate the stratum corneum and the technology for exfoliating the face does not pose a risk to the safety of users and other persons if specific regulatory controls are not applied. Therefore, this product meets both factors for a low risk general wellness product.

*Contains Nonbinding Recommendations*

Note: However, if the product is intended to exfoliate the skin in order to enhance the delivery of a topically applied product containing one or more active pharmaceutical ingredients through the stratum corneum, the product would be invasive. Therefore, the product would not be a low risk general wellness product.

8

*Contains Nonbinding Recommendations*

# VI. Determining whether General Wellness Products are within Scope of the Guidance

The following questions reflect the framework described in this guidance to determine whether general wellness products are within the scope of the guidance. Please note that these questions are intended to be addressed in the context of the full text of the guidance.

**A1.** **Does the product have an intended use that relates to maintaining or encouraging a general state of health or a healthy activity?**

Does the product only involve claims about sustaining or offering general improvement to functions associated with a general state of health that do not make any reference to diseases or conditions? Claims in this category include: weight management, physical fitness, relaxation or stress management, mental acuity, self-esteem, sleep management, or sexual function.

| YES ➔ | Go to A3. |
|---|---|
| NO ➔ | Go to A2 |

**A2.** **Does the product have an intended use that relates the role of healthy lifestyle with helping to reduce the risk or impact of certain chronic diseases or conditions?** (*In answering this question, the following two questions must be considered together.*)

    **a)** Does the product have an intended use that relates to sustaining or offering general improvement to functions associated with a general state of health while making reference to diseases or conditions, and where it is well understood and accepted that healthy lifestyle choices may play an important role in health outcomes for the disease or condition?

**AND**

    **b)** Is the relation between healthy lifestyle and disease specifically expressed as **"may help to reduce the risk of", or "may help living well with"**, a chronic disease or condition?

| YES ➔ | **Go to A3.** *Both questions A2(a) and A2(b) must be answered "Yes" in order to proceed to question A3.* |
|---|---|
| NO ➔ | Product is **NOT** a low risk general wellness product, and is **outside the scope of this guidance.** |

9

*Contains Nonbinding Recommendations*

**A3.   Is the product low risk?**

Is the product not invasive, and not implanted, and does not involve a technology that may pose a risk to the safety of users or other persons if specific regulatory controls are not applied, such as risks from lasers or radiation exposure? *In answering this question, consider whether CDRH actively regulates products of the same type as the product in question.*

| YES ➔ | **The product is likely a general wellness product within the scope of this guidance, but the factors and examples in the guidance should be reviewed to confirm the status of the product.** |
|---|---|
| NO ➔ | Product is **NOT** a low risk general wellness product, and is **outside the scope of this guidance.** |